STATE v. JOE TOWERY.

(Filed 15 January, 1954.)

**1. Municipal Corporations § 38—**

In enacting and enforcing an ordinance for the observance of Sunday, a municipal corporation is vested with discretion in determining the kinds of pursuits, occupations or businesses to be included or excluded, and classifications will be upheld if they are reasonable and affect all within each class equally, the test being whether there is discrimination within a class and not whether there is discrimination as between the classes.

**2. Same—**

> The operator of a market coming within the purview of a municipal ordinance proscribing the carrying on of such business on Sunday may not defend a prosecution for selling prohibited articles by attacking the validity of the ordinance on the ground that some of his items of stock were sold by his competitors who came within a different classification and were permitted to sell such articles on Sunday.

APPEAL by defendant from *Sharp, Special Judge,* September Criminal Term, 1953, of GUILFORD (High Point Division).

Criminal prosecution on a warrant charging the violation of a city ordinance.

The defendant was tried and convicted in the Municipal Court of the City of High Point and from the judgment imposed appealed to the Superior Court.

The warrant charges that the defendant, within the city limits of the City of High Point, or within one mile thereof, did willfully and unlawfully operate a place of business, to wit: a curb market, by remaining open for the purpose of selling and offering for sale goods, wares and merchandise between the hours of midnight Saturday and midnight Sunday by selling tomatoes, peaches and toilet paper, on Sunday, 26 July, 1953, in violation of Section 17.32 of The Code of the City of High Point, as amended 17 June, 1952.

Section 17.32 of The Code of the City of High Point, as amended, in pertinent part, reads as follows:

"It shall be unlawful for any place of business to remain open for the purpose of selling or offering for sale goods, wares, merchandise or services between the hours of midnight Saturday and midnight Sunday, except as follows: hotels; boarding houses; restaurants; cafes, delicatessen and sandwich shops furnishing meals and selling bread, cooked or prepared meats incidental to the operation of such business; filling stations furnishing petroleum products and automobile accessories; garages furnishing repair work or storage; ice cream or confectionary stores, furnishing ice cream, cigars, tobacco, nuts and soft drinks *only;* cigar stands and newsstands furnishing cigars, tobacco, candies, nuts, newspapers, magazines and soft drinks *only;* drugstores furnishing medical or surgical supplies, cigars, tobacco, ice cream, candies, nuts, soft drinks, newspapers and magazines; ice dealers, for the manufacture and sale of ice; dairies, for the manufacture and sale of dairy products; bakeries, for the manufacture, sale and delivery of bakery products; . . ." (Italics ours.)

The State offered evidence tending to show that the defendant made the sales as set out in the warrant. Whereupon, counsel for the defendant stipulated that the defendant "does not operate a hotel, boarding house, restaurant, cafe, a delicatessen and sandwich shop furnishing meals,

filling station or garage or an ice cream and confectionary store as such, or a cigar and newsstand as such, or a drugstore, furnishing medical and surgical supplies, nor is he an ice dealer manufacturing ice, nor does he operate a dairy for the manufacture and sale of dairy products, nor does he operate a bakery for the manufacture and delivery of bakery products, but that he operates exclusively as a curb market operator for the sale of merchandise generally found in curb markets."

The defendant testified: "I was open for business on July 26, 1953. That was a Sunday. I sold the items that day, consisting of tomatoes, peaches and toilet paper, for which I stand charged here. In the operation of my curb market I sell bread, cooked and prepared meats, ice cream, cigars, tobacco, nuts, soft drinks, candies, newspapers, magazines, some medical supplies, . . . and all kinds of salve and stuff like that, bandaids and tape, iodine, merthiolate, mercurochrome—general medical supplies, ice cream, dairy products, butter, milk, eggs and other items normally sold by dairy concerns, bakery products, consisting of cookies, cakes, bread, those items generally sold by bakers. I sell a great many other items as well, items usually found in a grocery store. I sell items usually found in a confectionary store, dairies, tobacco stores, delicatessen stores. I do not sell petroleum products or automobile accessories. I do sell soft drinks. These other businesses are in competition with me." On cross-examination, the defendant testified: "I sell flour in bulk, sugar in bags, various fruit, fresh fruit, canned goods, fresh vegetables, sausage and bacon. I do not prepare meals there. My sale of bread and meat is not incidental to preparation of any meal. I sell practically everything that is sold in a general grocery store or super market. . . . on the date of the 26th of July I was selling any and everything I had in my place."

The jury returned a verdict of guilty, and from the judgment imposed the defendant appeals, assigning error.

*Attorney-General McMullan, Assistant Attorney-General Love, and Gerald F. White, Member of Staff, for the State.*
*Schoch & Schoch for appellant.*

DENNY, J. Attacks on the validity of Sunday ordinances have been a fruitful source of litigation in this country. In recent years particularly, there seems to be a growing desire on the part of many individuals, who are engaged in commercial enterprises, to completely ignore the observance of Sunday as a day of rest. In fact, in some jurisdictions, the courts seem to have concluded that Sunday closing ordinances are invalid if the mercantile establishments, which are required to close on Sunday, carry items of merchandise similar to those which may be sold on Sunday by the excepted class of business establishments. *Elliott v. State,* 29

Ariz. 389, 242 P. 340, 46 A.L.R. 284; *Allen v. City of Colorado Springs,* 101 Colo. 498, 75 P. 2d 141. In the case of *Mt. Vernon v. Julian,* 369 Ill. 447, 17 N.E. 2d 52, 119 A.L.R. 747, the Supreme Court of Illinois said: "No reason is suggested and we can think of none why the shop of a dressmaker or milliner should be required to close while the cigar store remains open. None is apparent why a dry goods store should be required to close when a newsstand continues to operate. We do not see where the public welfare is served by closing the grocery store and allowing a confectionary store to remain open, nor in closing a notions store while a drug store next door which sells notions is permitted to operate." It would seem that the reasoning of the Illinois Court ignores the right of a municipality in adopting a Sunday closing ordinance to discriminate as between classes, *S. v. Trantham,* 230 N.C. 641, 55 S.E. 2d 198, but instead makes the question of competition or the right generally to conduct a business the determinative factor.

It is generally conceded that the governing body of a municipality, clothed with power to enact and enforce ordinances for the observance of Sunday, "is vested with discretion in determining the kinds of pursuits, occupations, or businesses to be included or excluded, and its determination will not be interfered with by the courts provided the classification and discrimination made are founded upon reasonable distinctions and have some reasonable relation to the public peace, welfare, and safety." 50 Am. Jur., Sundays & Holidays, section 11, page 810; *S. v. McGee,* 237 N.C. 633, 75 S.E. 2d 783.

In *S. v. Trantham, supra, Barnhill, J.,* pointed out that: "Legislative bodies may distinguish, select, and classify objects of legislation. It suffices if the classification is practical. *Magoun v. Bank,* 170 U.S. 283, 42 L. Ed. 1037; *S. v. Davis, supra* (171 N.C. 809, 89 S.E. 40). They may prescribe different regulations for different classes, and discrimination as between classes is not such as to invalidate the legislative enactment. *Smith v. Wilkins,* 164 N.C. 135, 80 S.E. 168. The very idea of classification is inequality, so that inequality in no manner determines the matter of constitutionality. *Bickett v. Tax Commission,* 177 N.C. 433, 99 S.E. 415; *R. R. v. Matthews,* 174 U.S. 96, 43 L. Ed. 909. The one requirement is that the ordinance must affect all persons similarly situated or engaged in the same business without discrimination. *City of Springfield v. Smith,* 322 Mo. 1129, 19 S.W. 2d 1."

The defendant here, like the defendant in *S. v. McGee, supra,* does not claim that the ordinance discriminates against him in so far as it applies to any other person or persons similarly situated. He simply claims that the business establishments permitted to remain open on Sunday sell certain articles of merchandise similar to those which he sells, therefore, he says they are his competitors. He falls into error in undertaking to make

competition as between classes the test rather than discrimination within a class.

In the case of *S. v. Medlin,* 170 N.C. 682, 86 S.E. 597, the Town of Zebulon had adopted an ordinance which prohibited keeping any shop or store open on Sunday for the purpose of buying and selling (except ice), but provided that "drug stores may be kept open at all times on Sunday for the sale of drugs and medicines; and from 6 to 9:30 o'clock in the morning and from 1 to 4:30 o'clock in the afternoon, for the sale of drugs, medicines, mineral waters, soft drinks, cigars and tobacco only." The defendant who did not operate a drug store, opened his grocery store between the hours of 6 and 8 o'clock a.m., on Sunday, 18 January, 1915, while the above ordinance was in full force and effect, and sold cigars, cigarettes and Coca-Cola to several purchasers and received cash payments therefor. At this same time, a drug store in Zebulon was open for the sale of these same articles. The Court said: "This ordinance, which prohibits keeping open stores and other places of business for the purpose of buying or selling, except ice, drugs and medicines, and permits the drug stores to sell soft drinks and tobacco for a limited time in the morning and afternoon, as a convenience to public customs, is not an unreasonable exercise of the police power." This decision has been followed and cited with approval in *S. v. Davis,* 171 N.C. 809, 89 S.E. 40; *S. v. Burbage,* 172 N.C. 876, 89 S.E. 795; *Lawrence v. Nissen,* 173 N.C. 359, 91 S.E. 1036; *S. v. Kirkpatrick,* 179 N.C. 747, 103 S.E. 65; *S. v. Weddington,* 188 N.C. 643, 125 S.E. 257, 37 A.L.R. 573, and *S. v. McGee, supra.*

Moreover, it will be noted that in the ordinance under consideration, the exemption as to cafes, delicatessens and sandwich shops is limited to those furnishing meals and selling bread, cooked or prepared meats incidental to the operation of such business. Likewise, the exemption extends to (1) "ice cream or confectionery stores, furnishing ice cream, cigars, tobacco, nuts and soft drinks *only;*" and (2) "cigar stands and newsstands furnishing cigars, tobacco, candies, nuts, newspapers, magazines and soft drinks *only.*" (Italics ours.)

The defendant, according to his own testimony, operates a curb market and sells "practically everything that is sold in a general grocery store or super market." Therefore, he has shown no arbitrary or unreasonable exercise of the police power in the classification and selection of businesses to be closed on Sunday.

As stated by *Stacy, C. J.,* in *S. v. Weddington, supra:* "It must be remembered that we are dealing with the exercise of an unquestioned police power, and whether it transcends the bounds of reason—not with its wisdom or impolicy." *S. v. Vanhook,* 182 N.C. 831, 109 S.E. 65.

After a careful consideration of the question raised on this record, and the authorities bearing thereon, we are of the opinion that the ordinance

in so far as it has been challenged on this appeal, is constitutional and, therefore, the verdict below must be upheld.

No error.